# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br>         Plaintiff,<br>v.<br>SPRINT NEXTEL CORPORATION,<br>         Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. 2:12-cv-832-JRG-RSP<br>(Lead Case) |
| v.<br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,<br>         Defendant. | §<br>§<br>§<br>§<br>§ | Case No. 2:13-cv-259-JRG-RSP |
| v.<br>APPLE INC.,<br>         Defendant. | §<br>§<br>§<br>§ | Case No. 2:13-cv-258-JRG-RSP |

## MEMORANDUM ORDER

Before the Court is Defendant Apple's Motion to Strike the Damages Report of MTEL's Damages Expert, Walter Bratic (Dkt. 244, the "Motion").

## APPLICABLE LAW

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's

proposed testimony.  *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999);  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993).  District courts are accorded broad discretion in making Rule 702 determinations of admissibility.  *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable").  Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial.  *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration.  *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony.");  *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . .  Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note).  As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof

are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

**Mr. Bratic's Opinions Regarding the '428 and '506 Patents**

Apple initially challenges Mr. Bratic's determination of a royalty rate based on the price of third-party applications on three bases.

First, Apple contends that Mr. Bratic's "analysis is deficient and unreliable because MTEL's technical expert categorically stated that he never evaluated any third party apps." (Mot. at 2.) Dr. Nettleton did state that he had not analyzed third party apps to show that those apps infringed in conjunction with the infringement portion of the case. Dr. Nettleton also testified, as Apple states, that he had not had any conversations with Mr. Bratic. However, Apple's assertions are not entirely complete: Dr. Nettleton quickly corrected the latter statement to assert that he did, in fact, have conversations with Mr. Bratic over the course of "two, possibly three, phone calls in fact." (Resp. at 3.) Apple's complaint that it "is unable to test the sufficiency of Mr. Bratic's reliance" on Dr. Nettleton's analysis rings hollow in light of the fact that Apple had the opportunity to inquire at Dr. Nettleton's depositions as to the substance of those conversations but declined to do so. Apple's complaint that Mr. Bratic is merely "parroting conclusions" also fails, as even Apple acknowledges that Mr. Bratic "must … rely on a technical expert to support his opinion concerning the functionality of the selected third-party apps" since he is not himself a technical expert. (Mot. at 7, 5.) The Court is sensitive to the "credibility concerns" raised by Apple in light of the shifts in Dr. Nettleton's testimony, but cross-examination is the ideal vehicle with which to address such concerns.

Apple next claims that "Mr. Bratic acknowledges that comparable third-party apps are available for free download, but simply discards such apps as not relevant to his analysis." (Mot.

at 2.) However, Mr. Bratic did address "free" apps, and also set forth a reasoned analysis regarding why the apparent "free" price tag did not accurately represent the value derived from those applications. Apple does not – and the Court observes that it likely cannot – dispute the fact that revenue and value can be derived from applications that can be downloaded free of charge. Apple is free to cross examine Mr. Bratic on this point, but the Court finds no merit to Apple's request to exclude Mr. Bratic's testimony on this basis.

Apple next alleges that Mr. Bratic's analysis "fails to properly apportion the purchase price of the apps he considered." (Mot. at 9.) But Mr. Bratic's analysis uses applications that MTEL alleges derive their value from patented features that are also found in Apple's software. In this way, Mr. Bratic's analysis is based on the factual contention that those applications primarily derive their value from a single disparate feature (emoji functionality, templated calendar, etc.). It is unclear to the Court how Apple would propose that further apportionment could be made off an application that Mr. Bratic and Dr. Nettleton contend derives its value from a single patented feature. The Court finds that Mr. Bratic has appropriately apportioned the value given the factual contentions underpinning of Mr. Bratic's and Dr. Nettleton's conclusions. Apple obviously disagrees with those factual contentions, but has pointed to nothing in Mr. Bratic's testimony that cannot be addressed by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

**Mr. Bratic's Opinions Regarding the '946 Patent**

Apple challenges Mr. Bratic's "cost savings" analysis with regard to the '946 patent on two bases. Apple first claims that Mr. Bratic claims that "Mr. Bratic cites to no technical articles or other evidence that validates estimating data downloads over the life of a smartphone." (Mot. at 3.) As MTEL points out – and Apple implicitly acknowledges in its reply – measuring lifetime value of smartphone functionality is routine in the smartphone industry. The Court sees Mr.

Bratic's lifetime valuation methodology as relatively uncontroversial. Apple more heavily relies on its claim that "Mr. Bratic again dismisses as irrelevant evidence that undermines the entire basis for his theory: the fact that (i) no cellular provider has ever charged for data downloads based on the life of a smartphone, and (ii) many cellular providers do not charge anything at all for data downloads." Apple's first contention may be true on its face, but Mr. Bratic adequately explains why that rather elementary calculation is ideal for analyzing the data savings in this case. Apple's latter contention, though, strikes the Court as flatly incorrect. Surely, Apple does not contend in this case that data use by an end user does not carry with it accompanying cost to the carrier, which is – in virtually every circumstance with which this Court is aware and is present in the record – passed on to the consumer. Some of those plans may call for "unlimited" data use, but as Mr. Bratic contends and Apple well knows, those plans are priced based on a certain presumed amount of consumption. To the extent that Apple believes that the existence of those plans undermines MTEL's damages model in this case, Apple is free to vigorously cross-examine Mr. Bratic accordingly.

**Symbol-Proxim License Agreement**

Apple's final complaint is that Mr. Bratic uses a license agreement negotiated after the *Symbol v. Proxim* case; Apple claims that "Mr. Bratic has failed to demonstrate how the *Symbol* agreement has any relevance to the damages issues here." (Mot. at 3.) Mr. Bratic based his analysis on Dr. Vojcic's conclusion that the *Symbol* agreement covered "technology comparable to the asserted transmission patents." (Resp. at 13.) Although Apple disagrees with Dr. Vojcic's conclusion, it does not seriously contest Mr. Bratic's analysis on this point. (Mot. at 13.) Rather, Apple's objection is primarily based on its contention that "[Mr. Bratic] provides no analysis as to why an agreement negotiated between Symbol and Proxim in 2004 would have any relevance or relation to a hypothetical negotiation between Bell Industries (a previous owner of the MTEL

patents) and Apple in 2007." (*Id*.) But in addition to the technological comparability, Mr. Bratic did set forth why he believed that the parties negotiating the *Symbol* agreement were similarly situated to the parties here. (Resp. at 13-14.) Apple is free to cross-examine Mr. Bratic on the differences it believes are present in the *Symbol* agreement (although it does not set forth anything in its briefing on the instant motion to materially counter any of Mr. Bratic's testimony), but Mr. Bratic's use of the *Symbol* agreement meets the baseline of comparability such that it will not confuse or mislead the jury in this case.

For all the reasons set forth above, the Court finds that Mr. Bratic's opinion is sufficiently reliable and relevant to the issues before the jury that it is appropriate for the jury's consideration.

**Mr. Bratic's Discussion of Revenue/Profits**

At the motion in limine stage, Apple also asked this Court to exclude "evidence of, argument on, and reference to Apple's size, wealth, market capitalization, cash balance, overall company revenues, and/or the entire market value of Apple's accused sales." (Dkt. 251 at 3.) The Court deferred ruling on that request to its ruling on the above motion. Apple submitted supplemental briefing on this issue (Dkt. 315-1), and MTEL responded in kind (Dkt. 325-1).

Apple's motion in limine number 2 is hereby **GRANTED**, and as requested by Apple, Mr. Bratic is not permitted to discuss "overall revenues and sales of the accused products" without prior leave of Court, which must be obtained outside of the presence of the jury. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011).

## CONCLUSION

Having considered all of Apple's objections to Mr. Bratic's opinions, Defendant Apple's Motion to Strike the Damages Report of MTEL's Damages Expert, Walter Bratic (Dkt. 244) is **DENIED**. Further, Apple's Motion in Limine Number 2 (See Dkt. 251) is **GRANTED IN PART** as set forth above.

**SIGNED this 6th day of November, 2014.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE