# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC,<br>　　　　Plaintiff,<br>v.<br>SPRINT NEXTEL CORPORATION,<br>　　　　Defendant. | § § § § § § § | Case No. 2:12-cv-832-JRG-RSP<br>(Lead Case) |
| v.<br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,<br>　　　　Defendant. | § § § § | Case No. 2:13-cv-259-JRG-RSP |
| v.<br>APPLE INC.,<br>　　　　Defendant. | § § § § | Case No. 2:13-cv-258-JRG-RSP |

## **MEMORANDUM ORDER**

Before the Court is Defendant Samsung's Motion to Exclude the Opinions and Testimony of MTEL's Damages Expert, Walter Bratic (Dkt. 257, the "Motion").

## **APPLICABLE LAW**

An expert witness may provide opinion testimony if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Rule 702 requires a district court to make a preliminary determination, when requested, as to whether the requirements of the rule are satisfied with regard to a particular expert's

proposed testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149 (1999); *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-93 (1993). District courts are accorded broad discretion in making Rule 702 determinations of admissibility. *Kumho Tire*, 526 U.S. at 152 ("the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable"). Although the Fifth Circuit and other courts have identified various factors that the district court may consider in determining whether an expert's testimony should be admitted, the nature of the factors that are appropriate for the court to consider is dictated by the ultimate inquiry—whether the expert's testimony is sufficiently reliable and relevant to be helpful to the finder of fact and thus to warrant admission at trial. *United States v. Valencia*, 600 F.3d 389, 424 (5th Cir. 2010).

Importantly, in a jury trial setting, the Court's role under *Daubert* is not to weigh the expert testimony to the point of supplanting the jury's fact-finding role; instead, the Court's role is limited to that of a gatekeeper, ensuring that the evidence in dispute is at least sufficiently reliable and relevant to the issue before the jury that it is appropriate for the jury's consideration. *See Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391-92 (Fed. Cir. 2003) (applying Fifth Circuit law) ("When, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony."); *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 249-50 (5th Cir. 2002) ("'[t]he trial court's role as gatekeeper [under Daubert] is not intended to serve as a replacement for the adversary system.' . . . Thus, while exercising its role as a gate-keeper, a trial court must take care not to transform a *Daubert* hearing into a trial on the merits," quoting Fed. R. Evid. 702 advisory committee note). As the Supreme Court explained in *Daubert*, 509 U.S. at 596, "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof

are the traditional and appropriate means of attacking shaky but admissible evidence." *See Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

## DISCUSSION

**Mr. Bratic's Opinions Regarding the '946 Patent**

Samsung challenges Mr. Bratic's "cost savings" analysis with regard to the '946 patent on two bases. Samsung first claims that Mr. Bratic "incorrectly described the resulting benefits of the accused feature" and that "Mr. Bratic concedes that he bases his opinion on user savings that are only realized when additional data is ***not*** requested." (Mot. at 5-6.) Samsung contends this is improper because "the purported benefit is the ability to request retransmission of a portion of a message instead of the entire message," and that Mr. Bratic "calculates data savings based on the unsound assumption that users *never* request retransmission." (Dkt. 360 at 1-2.) But MTEL's infringement theory is that it is not the request for retransmission itself that is the benefit of claim 1 of the '946 patent. Instead, MTEL contends that allowing the user the *option* of whether or not to retransmit the data is the benefit of the '946 patent and that doing so results in the data savings relied upon by Mr. Bratic. The Court disagrees with Samsung's claim that "[the] data savings bears no connection to the purported benefits of the '946 patent," and accordingly rejects its challenge on this ground.

Although it does not reiterate its position in its reply, Samsung's Motion also challenged Mr. Bratic assigning value to data savings in part because "many users have unlimited data plans." (Mot. at 6-7.) Samsung claims that "[w]ith unlimited data plans, there is no cost savings associated with data transmission, rendering the 2.95GB estimate meaningless." (*Id.*) This strikes the Court as flatly incorrect. Surely, Samsung does not contend in this case that data use by an end user does not carry with it accompanying cost to the carrier, which is – in virtually every circumstance with which this Court is aware and is present in the record – passed on to the

consumer. Some of those plans may call for "unlimited" data use, but as Mr. Bratic contends and Samsung well knows, those plans are priced based on a certain presumed amount of consumption. To the extent that Samsung believes that the existence of those plans undermines MTEL's damages model in this case, Samsung is free to vigorously cross-examine Mr. Bratic on that basis.

**Mr. Bratic's Opinions Regarding the '506 Patent**

Samsung initially challenges Mr. Bratic's determination of a royalty rate based on the price of third-party applications on three bases.

Samsung first alleges that Mr. Bratic's methodology is flawed because the applications "are not 'representative of the larger group of [apps] from which they are selected.'" (Mot. at 7; *see also* Mot. at 11-13.) Samsung cites *In re Chevron USA, Inc.*, 109 F.3d 1016, 1020 (5th Cir. 1997) in support of its challenge, but the Court observes that *Chevron* is inapposite and bears no similarity to the record in this case. (*See, e.g.*, Dkt. 305 at 6-7.) Thus, Samsung fails to cite a single case to support its proposition that Mr. Bratic must "analyze what constitutes the full universe of relevant apps." (Mot. at 8.) The Court observes that Samsung does not dispute the comparability of the applications Mr. Bratic does rely upon in his analysis, but only challenges the fact that Mr. Bratic's selection of applications is "non-random" and that the selected applications may not be "representative of all relevant apps." (Mot. at 8.) Notably, Samsung's own expert, when conducting a similar analysis, does not appear to have chosen random samples or analyzed the entire universe of relevant applications. It is not clear to the Court why Mr. Bratic should be required conduct a "random" sampling of apps, or a review of "all relevant applications" (a virtually infinite universe, depending on how it is defined), given that the stated goal of his analysis was to seek out, select, and analyze a number of comparable applications.

Samsung has failed to show that Mr. Bratic's analysis of comparable applications is so flawed in methodology that it would not be helpful to the jury.

Samsung also presents a number of other challenges in passing, the first of which is that "Mr. Bratic's opinion is further flawed because it assumes that 100 percent of the app's price is an appropriate proxy for the market value of the patented feature." (Mot. at 9.) Mr. Bratic's analysis uses applications that MTEL alleges derive their value from patented features that are also found in Samsung's products. In this way, Mr. Bratic's analysis is based on the factual contention that those applications primarily derive their value from a single disparate feature (emoji functionality, templated calendar, etc.). It is unclear to the Court how Samsung would propose that further apportionment could be made off an application that Mr. Bratic and Dr. Nettleton contend derives its value from a single patented feature. The Court finds that Mr. Bratic has appropriately apportioned the value given the factual contentions underpinning of Mr. Bratic's and Dr. Nettleton's conclusions. Samsung obviously disagrees with those factual contentions, but has pointed to nothing in Mr. Bratic's testimony that cannot be addressed by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002). Samsung also briefly challenges Mr. Bratic's reliance on Dr. Nettleton. (Mot. at 9.) But it is undisputed that Mr. Bratic is not a technical expert, and the Court observes that his reliance on a technical expert is both routine and unobjectionable given that Samsung had the opportunity to depose both Mr. Bratic and Dr. Nettleton.

Samsung next claims that "Mr. Bratic refused to include free apps in his analysis." (Mot. at 2.) However, Mr. Bratic did address "free" apps, and also set forth a reasoned analysis regarding why the apparent "free" price tag did not accurately represent the value derived from those applications. Samsung does not – and the Court observes that it likely cannot – dispute the

fact that revenue and value can be derived from applications that can be downloaded free of charge. Samsung is free to cross examine Mr. Bratic on this point, but the Court finds no merit to Samsung's request to exclude Mr. Bratic's testimony on this basis.

**Purported Profits to Samsung Entities**

Mr. Bratic contends that a hypothetical negotiation in this case would take into account the profits derived from the accused products to both STA (the subsidiary and the party to this case) and SEC (STA's parent company). Samsung challenges Mr. Bratic's analysis, but the nature of that challenge is not entirely clear. Samsung does not explicitly dispute the core of Mr. Bratic's assertion that a hypothetical negotiation would take into account profits to both the subsidiary and parent, other than simply stating that SEC's operating margin is not relevant. Instead, Samsung challenges the "unauthenticated" nature of the document on which Mr. Bratic relies upon to determine the combined margin of both SEC and STA. But the Court observes that the "Digital Trends" document challenged by Samsung was far from the only basis Mr. Bratic set forth in his report. (*See* Bratic Rep. at par. 84-88.) Notwithstanding this fact, however, it is not unreasonable for Mr. Bratic to seek outside information when STA has repeatedly refused to produce information regarding SEC. The weaknesses in that outside information are best addressed by vigorous cross-examination. *Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002).

**Overall Profits and Revenues**

Samsung finally asks the Court to exclude Mr. Bratic's references to Samsung's "overall profits for accused products." (Mot. at 14.) This request is granted, and Mr. Bratic is not permitted to discuss overall profits for accused products without prior leave of Court, which must be obtained outside of the presence of the jury. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011).

## CONCLUSION

Having considered all of Samsung's objections to Mr. Bratic's opinions, Defendant Samsung's Motion to Strike the Damages Report of MTEL's Damages Expert, Walter Bratic (Dkt. 257) is **GRANTED IN PART** as to overall profits and revenues and **DENIED** as to the remainder.

**Signed this date.**

**Dec 11, 2014**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE